UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| GRANDPARENTS.COM, INC., | Case No. 17-14711-LMI |
| GRAND CARD LLC, | Case No. 17-14704-LMI |
| Debtors.[1] | (Joint Administration Requested) |
| _____/ | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTORS
TO OBTAIN SECURED CREDIT AND USE CASH COLLATERAL,
(II) GRANTING LIMITED STAY RELIEF FOR THE LENDER TO
PERFECT POSTPETITION LOAN, AND (III) SCHEDULING FINAL HEARINGS**

**(EMERGENCY HEARING REQUESTED FOR
EARLIEST AVAILABLE DATE AND TIME AFTER APRIL 17, 2017)**

**Statement of Exigent Circumstances**

The Debtors submit that a hearing on this Motion is necessary on an emergency "first day" basis to avoid irreparable harm to the Debtors' estate. The Debtors lack any liquidity for daily operational expenses, including ongoing payroll and operating expenses. If the relief requested is not granted on an emergency basis the operating Debtor will be forced to cease operating. The Debtors' request to obtain credit must be heard on an emergency basis so the Debtor can stay afloat for the next few months until their assets can be sold on a going concern basis to a Stalking Horse subject to higher and better offers.

Granparents.com, Inc. ("GP") and Grand Cards LLC ("Grand Card") (collectively, the "Debtors"), by and through undersigned counsel, pursuant to Sections 105, 362, 363, 364(c) and (d) of the Bankruptcy Code, 11 U.S.C. 101 *et seq.* (the "Code"), Federal Rule of Bankruptcy Procedure 4001, 6003, 6004, 9014 and Local Rules 4001, 9013-(F) and (G) and Guideline For

---

[1] The address and the last four digits of the taxpayer identification of each of the debtors: (i) Grandparents.com, Inc., 589 8th Avenue, 6th Floor, New York, NY 10018 (1114), and (ii) Grand Card LLC, 10800 Biscayne Blvd., Suite 750, Miami, FL 33161 (3030).

{41456624;3}

Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing, file this motion (the "Motion") seeking entry of an order (the "Interim Order") in the form attached hereto as **Exhibit A** (I) authorizing the Debtors to obtain secured postpetition financing from VB Funding, LLC ("Lender") pursuant to Sections 364(c)(1) and 364(d) of the Code and granting adequate protection, if necessary, in connection therewith and limited stay relief; (II) authorizing the Debtors use of cash collateral pursuant to Section 363 of the Code and granting adequate protection, if necessary, in connection therewith, (III) scheduling a final hearing to consider entry of a final order approving the DIP Loan and use of cash collateral (the "Final Order").

## INTRODUCTION

The DIP Loan and other relief contemplated by this Motion are in the best interests of the creditors and all interested parties as without the requested relief GP will be unable to continue operating and meet its expenses going forward. Thus, the company will "go dark" and cease operating which closure will result in a straight liquidation of the Debtors. The Debtors' bankruptcy estates and the unsecured creditors and other interested parties will suffer irreparable harm if the Motion is not granted because if GP ceases operations it will lose its fair market and ongoing concern value which greatly exceeds the Debtors' liquidation value. Additional facts supporting the relief requested herein are set forth in the Declaration of Joshua Rizack in Support of the Debtors' Chapter 11 Petitions and First Day Motions [ECF No. 4].

## STATEMENT OF RELIEF REQUESTED
## PURSUANT TO BANKRUPTCY RULE 4001(d)(1)(B)[2]

The Debtors seek an interim and final hearing on the Motion and the entry of the proposed Interim Order granting the following relief to avoid immediate and irreparable harm to

---

[2] The meaning of all defined terms included in this Statement are set forth *supra* or *infra*.

the Debtors' bankruptcy estates: (I) secured postpetition financing not to exceed **$1,575,000** (the "DIP Loan")[3] from Lender, pursuant to Sections 364(c)(1) and 364(d) of the Code and the terms of the existing loan documents, including the Amended and Restated Promissory Note dated September 15, 2016, attached hereto as **Exhibit B** (the "Loan Documents")[4], as amended by this Motion, the proposed Interim Order, and Approved Budget, and granting adequate protection, if necessary, in connection therewith; (II) stay relief pursuant to Section 362(d)(1) of the Code for the limited purpose of permitting the Lender to perfect its security interests requested in the Motion; (III) the Debtors' use of cash collateral in accordance with the Approved Budget pursuant to Section 363 of the Code and granting adequate protection, if necessary, in connection therewith, and (IV) scheduling a final hearing to consider entry of a final order approving the DIP Loan and use of cash collateral (the "Final Order") pursuant to Federal Rule of Bankruptcy Procedure 4001.

Subject to the Carve-Out (defined below), the Debtors propose that the DIP Loan shall have the highest administrative priority under Section 364(c)(1) of the Bankruptcy Code and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Cases or any successor case), and shall at all times be senior to the rights of the Debtors, any successor trustees or estate representatives in these Chapter 11 Cases or any successor cases.

---

[3] The Lender has agreed to fund the $1,146,612 necessary in accordance with the Approved Budget, but the total amount available under the prepetition credit facility/DIP Loan, subject to Lender's approval, is $1,575,000.

[4] Due to the extensive size of the Loan Documents, only the Amended and Restated Credit Agreement is attached hereto. Complete copies of the Loan Documents will be provided to any interested party upon written request to katherine.fackler@akerman.com.

Subject to the Carve-Out, the Lender shall be granted in accordance with Section 364(d) of the Code a senior priming lien ranking prior to all other claims and liens of the Debtors, which lien will be senior in priority to all security interests and liens securing the indebtedness and other obligations owing under any of the Debtors' prepetition loan and security agreements. The priming lien shall not be subject to challenge, but instead shall attach and become valid and perfected without the requirement of any further action by the Lender upon entry of the Interim Order.[5]

## SUMMARY OF TERMS OF FINANCING

1. Pursuant to Sections Bankruptcy Rules 4001, 6003, 6004, 9014 Local Rule 4001-2, 4001-3 and the *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "Guidelines") [CG-7], the Debtors shall be authorized to use the DIP Loan for the current and necessary expenses set forth in the budget attached hereto as **Exhibit C** and incorporated herein, plus an amount not to exceed ten percent (10%) for each line item (provided no amount shall be disbursed for legal or accounting fees absent proper application and entry of an order by the Court) (the "Approved Budget"), subject to the terms and conditions set forth in the Loan Documents, as modified and supplemented by the proposed Interim Order. The below chart provides a summary of the essential terms of the proposed post-petition financing.[6]

| **Material Terms of Proposed Financing** | Location in Loan Documents | Location in Proposed Interim Order |
|---|---|---|

---

[5] Notwithstanding, other than the Debtors' pre-petition loan with Lender, there are no other prepetition loans or security agreements between the Debtors and any other party.

[6] For purposes of completeness, parties should refer to the terms and conditions contained within the Loan Documents attached hereto as Composite Exhibit B.

{41456624;3}                                    4

| | | |
|---|---|---|
| • **The lender shall be VB Funding, LLC** | Amended and Restated Credit Agreement, Recitals, p. 5 | Para. E |
| • **The principal amount of the DIP Loan shall not exceed $1,575,000 ("<u>Principal Amount</u>"). On an interim basis, the Debtors are seeking a total of $225,750 for the first four weeks, to avoid immediate and irreparable harm.** | | Para. L |
| • **Interest payable monthly in arrears at the applicable non-default rate set forth in the Loan Documents. In the event of a default the DIP Loan shall bear interest at the default rate set forth in the Loan Documents** | § 2.6, Credit Agreement | Para. 7 |
| • **The proceeds of the DIP Loan shall only be used in accordance with the Approved Budget. The DIP Loan and the Carve-Out (as defined below) may not be used to prosecute any action against the Lender, whatsoever, or for any cost or expense not set forth in the Approved Budget.** | | Para. 2 |
| • **The Debtors shall provide Lender with bi-weekly reports which reflect their actual receipts and expenditures for the prior 2 week term, and the percentage variance per line item to the Approved Budget (the "<u>Reconciliation Report(s)</u>").** | | Para. 3 |
| • **In accordance with the Debtors motion for a sale of substantially all of its assets pursuant to § 363, filed contemporaneously herewith, and as a condition of the DIP Loan, the Debtors shall adhere to the following timeline (the "<u>Sale Timeline</u>"), unless otherwise modified in writing between the parties or by order of the Court:**<br><br>   o **Proposed hearing on Bid Procedures   April 21, 2017**<br>   o **Advertisements to begin   April 28, 2017**<br>   o **Notice of Executory contracts   May 1, 2017**<br>   o **Bid Deadline   May 31, 2017**<br>   o **File Notice of Qualified Bidders   June 1, 2017**<br>   o **Assignment/Cure Objection Deadline   May 31, 2017**<br>   o **Deadline to Object to sale and Designation of Qualification   May 31, 2017** | | Para. 3 |

|  |  |  |
|---|---|---|
| <ul><li>o **Proposed Auction and Sale Hearing   June 2, 2017** (at least 30 days after approval of Bid Procedures)</li><li>o **Notice of Accepted Service Contracts  June 1, 2017** (five days prior to Closing)</li><li>o **Closing                                                June 8, 2017** (or 3rd day after resolution of conditions precedent)</li><li>o **Proration Notification                   June 7, 2017**</li><li>o **Date by which closing must occur       June 8, 2017**</li><li>o **Deadline for 30 day closing ext.         June 7, 2017**</li></ul> |  |  |
| • **The DIP Loan shall become due and payable in full on the earlier of (i) closing of a § 363 sale of substantially all of the Debtors' assets; (ii) failure to adhere to the Approved Budget, (iii) failure to timely provide any of the Reconciliation Reports, when due, (iv) failure to adhere to the Sale Timeline, or (v) June 15, 2017 (the "Due Date").** |  | Para. 8 |
| • **The Debtors and Lender will continue to cooperate to develop an agreement for a sale of the Debtors' assets free and clear of liens and claims (under which Lender would provide the "stalking horse" purchase transaction and be entitled to credit bid the balance of its pre-petition loan plus the DIP Loan).** |  |  |

{41456624;3}                                           6

| | | | |
|---|---|---|---|
| • | **As more fully described in the Loan Documents, as modified by the Interim Order and subject to the Carve-Out, the Lender shall be granted the highest administrative priority under § 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Case or any successor case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in these Chapter 11 Cases or any successor case. As security for the DIP Loan the Lender shall be granted a valid, perfected, first priority priming lien on all real and personal property of the Debtors now owned or hereafter acquired and all other property of whatever kind and nature, in each case, that is pledged as collateral under any document, Court Orders, or any other order of the Bankruptcy Court in these Chapter 11 Cases (the "Collateral"). HOWEVER THE COLLATERAL SHALL EXCLUDE AND NOT INCLUDE CAUSES OF ACTION AND RECOVERIES PURSUANT TO CHAPTER 5 OF THE CODE.** | | Para. 9 |
| • | **The Debtor shall comply with all covenants contained with and more fully described in the Loan Documents, as modified by the Motion, Interim Order and Final Order.** | | Para. 15 |
| • | **Carve-Out from DIP Loan: not to exceed $130,602.93, exclusively for compensation for the COO for 6 months payable at $21,767.16 per month, payable upon the earliest of: (i) thirty (30) days following the closing of a sale of all, or substantially all, of the assets of the Debtors; or (ii) confirmation of a chapter 11 plan of reorganization or liquidation of the Debtors.** | | Para. 2 |

## I. Jurisdiction and Background

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 362, 364 and 507 of title 11 of the Code.

5.      On April 14, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11, title 11 of the Bankruptcy Code.

6.      The Debtors are operating their businesses and managing their affairs as debtors in possession. 11 U.S.C. §§ 1107(a) and 1108.

7.      In further support of this Motion, the Debtors rely upon the *Declaration of Joshua Rizack in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").

## II.     Debtors' Business and Operations

8.      The operating debtor, GP, owns and operates the Grandparents.com website (the "Website"), a membership organization and social media community which connects grandparents, seniors, and boomers to differentiated, discounted products and services. GP's business model is geared toward providing group discount benefits for a small membership fee. The Website offers content on everything from health and well-being, relationships, and finances to recipes and travel tips. In addition, on October, 9, 2013, GP entered into a Program Agreement (the "Aetna Contract") with Aetna Life Insurance Company ("Aetna") to establish a Program to offer a Group Medicare Supplement Plan to AGA's Members, pursuant to which the Debtors' receive a commission for each policy sold. It is also contemplated that GP may seek the endorsement of some of its partners in order to offer the Program to members, customers, and subscribers of each such partner ("Third Party Member"). GP may also promote the Group Medicare Supplement Plan to other entities or groups that are not GP Members or Third Party Members.

### III. Requested Relief

A. **Approval of Financing Under Sections 364(c) and (d) of the Bankruptcy Code and Limited Stay Relief.**

9. The Debtors seek approval of secured, post-petition loan from the Lender pursuant to the terms of the Loan Documents, Motion, and proposed Interim Order in an amount sufficient to fund the Debtors' operations and estates through the sale of substantially all of their assets pursuant to Section 363 of the Code in a principal amount not to exceed **$1,575,000.** On an interim basis, the Debtors' seek approval of a total amount of **$225,650** in accordance with the Approved Budget, enabling the Debtors to, *inter alia,* pay employees and operating expenses during the next 30 days. *See* Approved Budget attached hereto as Exhibit C.  The Debtors' payroll is bi-weekly in the amount of $38,658, with the exception of Steve Leber, who is typically paid $10,000 on a monthly basis.  The request to obtain credit is made to avoid immediate and irreparable harm to the Debtors' estates which will result if GP ceases operating because it lacks cash to carry on its business.

10. The super-priority administrative expense claims and the senior priming liens granted to the Lender pursuant to the Interim Order and the Loan Documents, as modified and supplemented by the Interim Order, shall be junior and subordinate as to the Carve-Out, as defined in the Interim Order, and as to fees due to the United States Trustee.

    **1. Section 364(c)(1) Superpriority Lien**

11. Subject to the Carve-Out  described herein, the Debtors propose that the DIP Loan shall have the highest administrative priority under § 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11

Case or any successor case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in the Chapter 11 Cases or any successor case (the "Superpriority Claims"). The Lender has not consented, through the Approved Budget or otherwise, to the imposition of any costs or expense of administration or other charge, fees, liens, assessment or claim (including, without limitation, any amounts set forth in the Approved Budgets) against Lender, its claims or collateral (including the Collateral) under § 506(c) of the Bankruptcy Code or otherwise, all of which rights the Debtors shall waive pursuant to the terms of an interim order granting this Motion and approving the Interim Financing.

12. The Lender may require the Debtors to deliver to Lender any chattel paper, instruments or securities evidencing or constituting any Collateral, and the Debtors are directed to cooperate and comply therewith. If Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if Lender, in accordance with the Loan Documents or the Interim Order, elects to take possession of any Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Chapter 11 Cases as of the commencement of these Chapter 11 Cases but with the priorities as set forth herein. The Lender may (in its sole discretion), but shall not be required to, file a certified copy of the Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtors have real or personal property.

    **2.**    **Section 364(d) Priming Lien and Limited Stay Relief.**

13. Subject to the Carve-Out described herein, as security for the DIP Loan the Debtors propose granting the Lender pursuant to Section 364(d) of the Code valid, perfected, senior priming liens and security interests in all of the Collateral (consisting of all real and personal property of the Debtors now owned or hereafter acquired) including, without limitation, licenses, vehicles, accounts, accounts receivable, customer contracts, customer lists, intellectual property, patents, trade secrets, property and/or leasehold rights, all other tangible and intangible assets. The priming lien EXCLUDES avoidance actions and recoveries pursuant to Chapter 5 of the Bankruptcy Code. Any security interest or lien upon the Collateral which is avoided or otherwise preserved for the benefit of the Debtors' estates under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the DIP Loan. The Lender shall be granted limited stay relief for cause pursuant to Section 362(d)(1) of the Code for the purpose of formally perfecting its post-petition liens which shall be within its sole discretion. **For the avoidance of doubt, the Debtors do not seek to include Avoidance Actions, or any the proceeds thereof as part of the Collateral.**

14. Through this Motion, the Debtors propose that the DIP Lender's senior priming liens shall be deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that the automatic stay imposed pursuant to Section 362 of the Code shall be deemed lifted for the limited purpose of allowing the Lender, at its sole option, to file or record or cause the Debtors to obtain third party consents or execute, file or record, at the Lender's expense any such UCC financing statements, notices of liens and

security interests, mortgages and other similar documents as the Lender may require. Accordingly, the DIP Loan shall prime Lender's pre-petition loan to the Debtors.

### 3. The Carve-Out

15. Debtors' seek approval for the payment of compensation for the Debtors' Chief Operating Officer, Lee Lazarus (the "COO"), as may be approved by the Court in an amount not to exceed $130,602.93, for six months of pay at $21,767.16 per month, payable upon the later of (i) thirty (30) days following the closing of a sale of all, or substantially all, of the assets of the Debtors; (ii) confirmation of a chapter 11 plan or reorganization or liquidation of the Debtors; or (iii) September 1, 2017. Further, if the COO is terminated for cause or resigns for good reason, the compensation would be immediately be payable.[7] In addition, the Carve-Out shall include not more than $236,456 to be utilized by the Debtors for the purchase of a tail for the Director's and Officer's Liability Policies.

16. The super-priority administrative expense claims and the liens granted to the Lender shall be junior and subordinate to the Carve-Out.

---

[7] The Debtors and Mr. Lazarus are in negotiations regarding a modification to his executive employment agreement on terms substantially consistent with the terms set forth herein, and will seek approval of that modification by this Court in due course.

### IV.    Authority For Relief

**A.    The DIP Loan Should Be Authorized Pursuant to Section 364 of the Code.**

The Code authorizes this Court to approve the DIP Loan in the manner proposed. 11 U.S.C. § 364(c)(1), (d). Specifically, the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the Court may authorize the debtor to obtain credit or incur debt (1) with priority over any and all administrative expenses as specified in sections 503(b) or 507(b) of the Bankruptcy Code, (2) secured by a lien on property of the estate that is not otherwise subject to a lien; and (3) secured by a junior lien on property of the estate that is subject to a lien. *See* 11 U.S.C. § 364(c)(1), (2), (3).

17.    Moreover, pursuant to Section 364(d) of the Code, the Lender may be granted a first priority senior priming lien on all of the Collateral which shall be senior to all other security interests and liens in property of the Debtors' estates in this or any subsequent or superseding cases (including, without limitation, any conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto); and

18.    The Debtors submit that ample justification exists for approval of the DIP Loan as the Debtors are unable to obtain a loan on an unsecured basis or that is allowable as an administrative claim under Section 503(b)(1) of the Bankruptcy Code. The Debtors have sought, right up to the time of the filing of these cases, unsuccessfully, such financing. *See Declaration of Joshua Rizack; Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c)); *Shaw Indus., Inc. v. First Nat'l Bank of PA (In re Shaw Indus., Inc.)*, 300 B.R. 861, 863 (Bankr. W.D. Pa. 2003); *In re Sky Valley, Inc.*, 100 B.R. 107, 113

(Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing"); *see also 495 Cent. Park*, *Ave Corp.*, 136 B.R., 630-31 (Bankr. S.D.N.Y. 1992) (holding that debtor must make an effort to obtain credit without the requirement of a priming lien but is not required to seek credit from every possible lender); *In re Dunes Casino Hotel*, 69 B.R. 784, 796 (Bankr. D. N.J. 1986) (holding that the debtor had made required efforts under section 364(d)(1) based on evidence that the debtor had attempted unsuccessfully to borrow funds on an unsecured basis or secured by junior liens, but that at least three such lenders were willing to advance funds secured by a superpriority lien); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (holding that the fact that two national banks had refused to grant unsecured loans was sufficient to support conclusion that the requirement under section 364(d)(1) was met).

19.     The second statutory requirement for obtaining postpetition credit under section 364(d)(1) is that the secured creditors whose liens are being "primed" by the DIP Lender must be provided with adequate protection of their interests in their collateral. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (*en banc*) (noting that adequate protection is required under section 364(d)(1)(B) of the Bankruptcy Code to insure that the creditor receives the value for which it bargained prebankruptcy); *Dunes Casino*, 69 B.R. at 793 (holding that "[a]dequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy"). This requirement is inapplicable since there are no lenders being primed by the DIP Loan, other than Lender's Replacement Liens (defined below).

20.     Because of the Debtors' immediate need for the liquidity provided by the DIP Loan, the Debtors, in the exercise of their sound business judgment, and in consultation with

their professional advisors, has concluded that the DIP Lender is the only lender able to offer a postpetition credit facility sufficient to meet the Debtors' working capital and case funding needs on the terms, and within the time frame, required by the Debtors. Indeed, without immediate access to liquidity sufficient to sustain normal course business operations, the value of the Debtors' assets and their bankruptcy estates will be severely, if not irreparably, harmed to the extreme detriment of the Debtors' creditors, employees and estates. Moreover, the Debtors have exercised sound business judgment in negotiating and agreeing to the proposed DIP Loan the terms of which are fair and reasonable, and are in the best interests of their estates.

21. Bankruptcy courts routinely defer to the debtor's business judgment on most business decision, including decisions to borrow money. *See In re Snowshoe Co.*, 789 F.2d at 1088; *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). Among other things, the Debtors believe that the funding to be provided pursuant to the DIP Loan (in accordance with the Budget) will be sufficient to fund all operating and case administration expenses through the conclusion of the Debtors' chapter 11 cases. The terms on which the DIP Loan is based are eminently fair and reasonable under the circumstances. The cost and expense of alternative financing (if available) would be detrimental to the Debtors' estates.

22. Finally, in addition to providing the monies needed to operate until the sale of the Debtors' assets, the DIP Loan should also provide the Debtors' employees and customers the needed confidence to continue their relationships with the Debtors.

> **B.    The Debtor's Use of Cash Collateral Should Be Authorized Pursuant to Section 363 of the Code.**

23. Subject to certain conditions, a bankruptcy court may authorize the use of cash collateral by a debtor. 11 U.S.C. § 363. If a debtor does not obtain consent to use cash collateral, Section 363(c)(2) provides that a debtor must obtain court approval for the requested

use of cash. *In re Sharon Steel Corp.*, 159 B.R. 165, 168 (Bankr. W.D. Pa. 1993) (noting further that "11 U.S.C. § 363(e) provides that the court shall prohibit or condition such use [of cash collateral] as is necessary to provide adequate protection of [the secured lender's] interest."). The *Sharon Steel* Court summed up the purpose of adequate protection as follows:

> The purpose of providing "adequate protection" is to insure that a secured creditor receives in value essentially what he bargained for. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987); H.R.Rep. No. 595, 95th Cong., 1st Sess. 339 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News, pp. 5787, 6295. The means of adequate protection provided by § 361 are not exclusive. *In re O'Connor*, 808 F.2d at 1397; *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984). Exactly what constitutes adequate protection must be decided on a case by case basis. *In re O'Connor,* 808 F.2d at 1396-97.

*Id.* at 169.

24. Once a court makes a determination that the interests in cash collateral will be adequately protected under a debtor's proposed usage, authorization of such usage is appropriate. *In re Markim, Inc.*, 15 B.R. 56 (Bankr. E.D. Pa. 1981) (stating "[s]ince we conclude that the debtor's application proposes a method by which the creditors who have a security interest in the cash collateral will be adequately protected under the debtor's proposal, we will authorize the debtor to use the cash collateral").

25. In this case, the Debtors' requested use of cash collateral will not adversely impact any other party and thus no harm will result from the granting of the relief requested herein. Specifically, the Lender has consented to the Debtor's use of cash collateral consisting of the DIP Loan proceeds, account receivables, and any cash on hand in accordance with the Approved Budget. In addition to any rights provided to Lender under 11 U.S.C. § 552(b)(2), as adequate protection of the rights and interests of the Lender in respect of the Debtors' use of any of Cash Collateral, the Lender will grant, pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, a valid, binding, enforceable, non-avoidable and perfected priority

replacement security interest in and lien on all currently owned or hereafter acquired assets and/or properties of Debtors in the same types of collateral and to the same extent and priority existing as of the petition date ("Replacement Liens"), which Replacement Liens shall be deemed to be effective as of the petition dates, and all proceeds, products, rents, revenues, or profits of such property; provided however that the Replacement Liens will be subordinate to the Lender's valid, binding, enforceable, non-avoidable and perfected first-priority priming lien against all the of the Debtors' post-petition assets up to the total amount of the advances made under the DIP Loan. The Replacement Liens shall be in addition to any security interests, liens, or rights of setoff existing in favor of the Lender on the petition dates, and shall secure all amounts due Lender. As set forth above, there are no other secured lenders, and thus no parties that will be primed by the DIP Loan, other than Lender's Replacement Liens.

26. The Debtors' bankruptcy estates will be irreparably harmed if use of cash collateral is not authorized on an interim and emergency basis to fund the Debtors' operations pending a sale of the assets. Accordingly, it is appropriate for the Court to enter an order authorizing the use of Cash Collateral by the Debtors in accordance with the terms of the Approved Budget, and to provide bi-weekly Reconciliation Reports in connection therewith.

27. The terms of the proposed use of the Cash Collateral and adequate protection arrangements are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment.

### V. Interim Approval of Postpetition Financing and Use of Cash Collateral

28. Fed. R. Bankr. P. 4001(b), (c) and (d) provide that a final hearing on a motion to use cash collateral, obtain credit and approval of agreements concerning same may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court may conduct a preliminary expedited hearing on the Motion and authorize the obtaining of

credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. The Debtors are seeking such interim relief through this Motion.

29. The Debtors believe that the relief sought in this Motion is in the best interest of the Debtors, the estates, and creditors, and that the entry of an Interim Order will allow for the continued operation of the Debtors' existing business for the purposes set forth above.

**WHEREFORE**, the Debtors respectfully request the entry of the attached Interim Order: (i) granting this Motion, (ii) authorizing the Debtors to obtain post-petition financing pursuant to the Loan Documents on an interim basis and related limited stay relief to perfect the DIP Loan, (iii) authorizing the use of cash collateral on an interim basis, (iv) scheduling a hearing to consider final approval of the financing and use of cash collateral sought herein; and (v) granting such other and further relief as is just and proper.

Dated: April 14, 2017

Respectfully submitted,

AKERMAN LLP

By: */s/ Steven R. Wirth*
Steven R. Wirth
Florida Bar No.: 170380
Email: steven.wirth@akerman.com
401 E. Jackson St., Suite 1700
Tampa, FL  33602
Telephone: (813) 223-7333
Facsimile: (813) 223-2837

and

Eyal Berger
Florida Bar No.: 011069
Email: eyal.berger@akerman.com
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
Telephone: (954) 712- 6071
Facsimile: (954) 847-5374
*Proposed Attorneys for Debtors*