UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| GRANDPARENTS.COM, INC., | Case No. 17-14711-LMI |
| GRAND CARD LLC, | Case No. 17-14704-LMI |
| Debtors.[1] | (Joint Administration Requested) |
| _____/ | |

**INTERIM ORDER (I) AUTHORIZING (A) SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. SECTIONS 105, 361 AND 364(c); (B) USE OF CASH COLLATERAL; AND (II) CONTINUING PRELIMINARY HEARING (ECF No. ___ )**

This matter came on to be heard on _____, 2017 at ____ a.m./p.m. (the "Preliminary Hearing"), upon the Emergency Motion of the Debtors, Grandparents.com, Inc. ("GP") and Grand Card LLC ("Grand Card", and together with GP, the "Debtors"), For Entry Of Interim And Final Orders (I) Authorizing The Debtors To Obtain Secured Credit And Use Cash

---

[1] The address and the last four digits of the taxpayer identification of each of the debtors: (i) Grandparents.com, Inc., 589 8th Avenue, 6th Floor, New York, NY 10018 (1114), and (ii) Grand Card LLC, 10800 Biscayne Blvd., Suite 750, Miami, FL 33161 (3030).

{41456644;2}

**Exhibit A**

Collateral, (II) Granting Limited Stay Relief For The Lender To Perfect Postpetition Loan, And (III) Scheduling Final Hearings (the "Motion") (ECF No. __), and the Court having reviewed and taken judicial notice of the file, the Declaration of Joshua Rizack in Support of the Debtors' Chapter 11 Petitions and First Day Motions (ECF No. 4), having heard argument and proffer of counsel, finding that due and sufficient notice of the Motion having been provided to all interested parties, good and sufficient cause appearing and for the reasons stated on the record at the Preliminary Hearing, the Court makes the following

**FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR ENTRY OF THIS INTERIM ORDER ONLY:**

    A.    Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Motion.

    B.    On April 14, 2017 the Debtors filed their voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

    C.    The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

    D.    This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. Section 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. Section 157(b)(2).

    E.    Prepetition, GP and VB Funding LLC ("Lender") entered into that certain September 15, 2016 Amended and Restated Promissory Note, along with other related documents and agreements (the "Loan Documents") attached as **Exhibit B** to the Motion. The Lender advanced funds prepetition to GP. The loan obligations are secured by a first priority

**Exhibit A**

lien in all the assets of the Debtors. In addition, Debtor Grand Card and non-debtor Grandparents Insurance Solutions, LLC, both wholly-owned subsidiaries of GP, are guarantors under the Loan Documents. The Debtors acknowledge that the Loan Documents are valid and that the security interests granted by the Loan Documents to Lender are enforceable and unavoidable. The Debtors do not have any other secured creditors. GP acknowledges that as of the Petition Date, it owes Lender at least $9,827,621.96.

F. The Debtors propose that they obtain post-petition financing from Lender under the same terms as set forth in the Loan Documents, except as otherwise modified herein (the "DIP Loan").

G. The Debtors are unable to operate without the use of Cash Collateral (defined below) and the DIP Loan.

H. The Debtors assert that they are unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense in an amount necessary to fund operations and that financing on a post-petition basis is not otherwise available to pay operating expenses or wage obligations to their employees without the Debtors granting, pursuant to Bankruptcy Code Section 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Sections 503(b) and 507(b) of the Bankruptcy Code and the granting of a senior priming lien pursuant to Bankruptcy Code Section 364(d).

I. Notice of the Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee and (ii) the creditors holding the 20 largest unsecured claims against the Debtors. No official committee of unsecured creditors (the "Committee") has as yet been appointed in these Chapter 11 Cases.

**Exhibit A**

J.  The DIP Loan has been negotiated in good faith and at arm's length between the Debtors and Lender, and any credit extended to the Debtors pursuant to this Interim Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Section 364(e) of the Bankruptcy Code and the Lender shall have all of the protections thereunder.

K.  Based on the record before this Court, it appears that the terms of this Interim Order, including, without limitation, the terms of the DIP Loan and use of Cash Collateral (defined below), are fair and reasonable, reflect the Debtors' exercise of sound and prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.  The Debtors have requested immediate entry of this Interim Order so that the DIP Lender will advance funds in accordance with the Approved Budget attached to the Motion as **Exhibit C**. The advanced funds shall not exceed the amount of $225,750 during this Interim Period.

M.  The partial relief granted herein to use Cash Collateral (defined below) and obtain the DIP Loan is necessary to avoid immediate and irreparable harm to the Debtors' estates. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the Debtors to continue servicing their necessary contracts and providing services to their clients without interruption.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED ON AN INTERIM BASIS:**

1.  <u>Motion Granted</u>. The Motion is **GRANTED**.

**Exhibit A**

2. <u>Authorization For Interim DIP Loan and Permission to Use Cash Collateral</u>. The Debtors are expressly authorized and empowered to (i) obtain credit pursuant to the Loan Documents and this Interim order on an interim basis (the "<u>Interim DIP Loan</u>") and (ii) based on the consent of the Lender to use the proceeds of the Interim DIP Loan constituting Cash Collateral (defined below) for the payment of the current and necessary expenses set forth in the budget attached hereto as **<u>Exhibit A</u>** and incorporated herein, plus an amount not to exceed ten percent (10%) for each line item (provided no amount shall be disbursed for legal or accounting fees absent proper application and entry of an order by the Court) (the "<u>Approved Budget</u>"). The Debtors are further authorized to pay out of the DIP Loan the Carve-Out not to exceed $130,602.93 exclusively as compensation for Lee Lazarus, the Debtors' Chief Operating Officer, for six (6) months payable at $21,767.16 per month, payable upon the later of (i) thirty (30) days following the closing of a sale of all, or substantially all, of the assets of the Debtors, (ii) confirmation of a chapter 11 plan of reorganization or liquidation of the Debtors, or (iii) September 1, 2017. Further, if the COO is terminated for cause or resigns for good reason, the compensation would immediately be payable.[2] In addition, the Carve-Out shall include not more than $236,456 to be utilized by the Debtors for the purchase of a tail for the Director's and Officer's Liability Policies.

3. <u>Terms of the Interim DIP Loan</u>. The terms of the Interim DIP Loan are governed by the pre-petition loan documents between Lender and the Debtors, including the Amended and Restated Promissory Note dated September 15, 2016, along with related documents and agreements attached to the Motion as Composite Exhibit B and incorporated herein (the "<u>Loan Documents</u>"), as modified by this Interim Order. The Loan Documents are modified and

---

[2] The Debtors and Mr. Lazarus are in negotiations regarding a modification to his executive employment agreement on terms substantially consistent with the terms set forth herein, and will seek approval of that modification by this Court in due course.

{41456644;2} 5

**Exhibit A**

supplemented by this Interim Order to require that the Debtors shall: (i) adhere to the Approved Budget, (ii) provide Lender with bi-weekly reports which reflect their actual receipts and expenditures for the prior 2 week term, and the percentage variance per line item to the Approved Budget (the "Reconciliation Report(s)"), and (iii) adhere to the following timeline for the sale being proposed by the Debtors by separate motion, pursuant to §363 of the Bankruptcy Code (the "Sale Timeline"):

- Proposed hearing on Bid Procedures — April 21, 2017
- Advertisements to begin — April 28, 2017
- Notice of Executory contracts — May 1, 2017
- Bid Deadline — May 31, 2017
- File Notice of Qualified Bidders — June 1, 2017
- Assignment/Cure Objection Deadline — May 31, 2017
- Deadline to Object to sale and Designation of Qualification — May 31, 2017
- Proposed Auction and Sale Hearing of Bid Procedures) — June 2, 2017 (at least 30 days after approval
- Notice of Accepted Service Contracts — June 1, 2017 (five days prior to Closing)
- Closing — June 8, 2017 (or 3rd day after resolution of conditions precedent)
- Proration Notification — June 7, 2017
- Date by which closing must occur — June 8, 2017
- Deadline for 30 day closing ext. — June 7, 2017

4. **Cash Collateral Authorization**. The Debtors and Lender are parties to a loan transaction secured by, among other things, all of the Debtors' real and personal property of the Debtors now owned or hereafter acquired and all other property of whatever kind and nature, in each case, that is pledged as collateral under any document, Loan Documents, Court Orders, or any other order of the Bankruptcy Court in these Chapter 11 Cases (the "Collateral"). As of the Petition Date, the Debtors acknowledge that generally all cash and cash equivalents of the Debtors were Lender's Collateral or proceeds of said Collateral (the "Cash Collateral"). Accordingly, for purposes of this Order, the Debtors acknowledge that Cash Collateral shall consist of any and all (i) cash or cash equivalents on hand (whether under the control of the

**Exhibit A**

Debtors or any third party) and cash collections of the Debtors, whether obtained prior to, on or after the Petition Date, (ii) cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any of the Collateral, whether obtained prior to, on or after the Petition Date and (iii) any other property of the Debtors that constitutes Cash Collateral, as provided in sections 363(a) and 363(c) of the Bankruptcy Code; provided that Cash Collateral does not include the proceeds of any Chapter 5 avoidance actions held or maintained by the Debtors.  Subject to the provisions of this order, the Debtors are authorized to use Cash Collateral for the period of 14 days to pay: (a) amounts expressly authorized by this Court, including payments to the United States Trustee for quarterly fees; (b) the current and necessary expenses set forth in the Approved Budget; and (c) such additional amounts as may be expressly approved in writing by Lender.  The Debtors shall provide Lender with bi-weekly Reconciliation Reports.  The authorization to use Cash Collateral will expire on April 28, 2017 at 5 p.m.  Except as authorized in this Interim Order, the Debtor is prohibited from using the Cash Collateral. Nothing in this Order shall authorize the disposition of any Collateral outside the ordinary course of business or the Debtors' use of the Cash Collateral resulting therefrom without the prior written consent of the Lender.  In addition to any rights provided to Lender under 11 U.S.C. § 552(b)(2), as adequate protection of the rights and interests of the Lender in respect of the Debtors' use of any of Cash Collateral, the Lender will grant, pursuant to Section 361, 362 and 363 of the Bankruptcy Code, a valid, binding, enforceable, non-avoidable and perfected priority replacement security interest in and lien on all currently owned or hereafter acquired assets and/or properties of Debtors in the same types of collateral and to the same extent and priority existing as of the petition date ("Replacement Liens"), which Replacement Liens shall be deemed to be effective as of the petition dates, and all proceeds, products, rents, revenues, or

**Exhibit A**

profits of such property; provided however that the Replacement Liens will be subordinate to the Lender's valid, binding, enforceable, non-avoidable and perfected first-priority priming lien against all the of the Debtors' post-petition assets up to the total amount of the advances made under the DIP Loan. If and upon The Replacement Liens shall be in addition to any security interest liens, or rights of setoff existing in favor of the Lender on the petition dates, and shall secure all amounts due Lender.

5. The Debtors may enter into such other agreements, instruments and documents as may be necessary or required or requested by Lender in its sole discretion to evidence the Interim DIP Loan and to consummate the terms and provisions contemplated by the Loan Documents and this Interim Order and to evidence perfection of the liens and security interests to be given to Lender hereunder. The Debtors and Lender may enter into any nonmaterial amendments of or modification to the Loan Documents without the need of further notice and hearing or order of this Court.

6. <u>The DIP Indebtedness.</u> The Interim DIP Loan and all other indebtedness and obligations incurred by the Debtors on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to this Interim Order and the Interim DIP Loan which may now or from time to time hereafter be owing by the Debtors to Lender (including principal, accrued and unpaid interest, fees, costs and expenses, including without limitation reasonable attorneys' fees and expenses, and any other amounts owed under this Order or the Loan Documents) are referred to herein as the "DIP Indebtedness".

7. <u>Interest, Fees, Costs and Expenses</u>. The DIP Indebtedness shall bear interest at the applicable non-default rate as set forth in the Motion and in the Loan Documents. Notwithstanding the foregoing, nothing in this Interim Order shall be construed to limit or

**Exhibit A**

otherwise impair the joint and several liability of the Debtors and its non-debtor subsidiaries, for all of the DIP Indebtedness under the Loan Documents.

8.  Termination of the DIP Loan and Use of Cash Collateral. Lender's obligation to provide the Interim DIP Loan and Lender's consent to the use of the Cash Collateral shall immediately and automatically terminate (except as Lender may otherwise agree in writing in its sole discretion), and all DIP Indebtedness shall be immediately due upon the earlier of (i) closing of a § 363 sale of substantially all of the Debtors' assets; (ii) failure to adhere to the Approved Budget, (iii) failure to timely provide any of the Reconciliation Reports, when due, (iv) failure to adhere to the Sale Timeline, or (v) June 15, 2017 (the "Due Date"). In the event of a Post-Petition default of the terms of this Interim Order and/or the DIP Loan, the Lender may declare the DIP Indebtedness immediately due and owing; provided that the Lender may not exercise any remedies against the Debtors upon default without first providing two business days' notice of default to the Debtors, obtaining a hearing date.

9.  Security for DIP Loan. As security for the DIP Indebtedness, the Lender is granted a valid, perfected, first priority priming lien (the "Interim DIP Lien") against all real and personal property of the Debtors now owned or hereafter acquired and all other property of whatever kind and nature, in each case, together with the proceeds, products, rents and profits of the pledged assets; provided that such Interim DIP Lien does not attach to the proceeds of any Chapter 5 avoidance actions held or maintained by the Debtors. Subject only to any claims by the United States Trustee for quarterly fees, the Lender is granted an administrative expense in the amount of the Interim DIP Loan with the highest priority under §364(c) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a),

{41456644;2}                                            9

**Exhibit A**

507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases or any successor case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in the Chapter 11 Cases or any successor case.

        10.    <u>Perfection of Interim DIP Lien and Limited Stay Relief</u>. The Interim DIP Lien shall be, and is hereby deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; <u>provided, however</u>, that notwithstanding the provisions of Section 362 of the Bankruptcy Code which stay is lifted for the limited purpose of allowing perfection, the (i) Lender may, at its sole option, file or record or cause the Debtors to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as Lender may require, and (ii) Lender may require the Debtors to deliver to Lender any chattel paper, instruments or securities evidencing or constituting any Collateral, and the Debtors are directed to cooperate and comply therewith. If Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if Lender, in accordance with the Loan Documents or this Interim Order, elects to take possession of any Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Chapter 11 Cases as of the

commencement of these Chapter 11 Cases but with the priorities as set forth herein. The Lender may (in its sole discretion), but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtors have property.

11. <u>Books and Records</u>. The Debtors shall permit Lender and any authorized representatives designated by Lender (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of any Debtor, including the Debtors' respective financial and accounting records, and to make copies and take extracts therefrom, and to discuss any Debtors' affairs, finances and business with such Debtors' officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtors shall promptly provide to Lender any information or data reasonably requested to monitor the Debtors' compliance with the covenants and the provisions of the Loan Documents and this Order.

12. <u>Effect of Dismissal, Conversion or Substantive Consolidation</u>. If any Chapter 11 Case is dismissed, converted, otherwise superseded or substantively consolidated, Lender's rights and remedies under this Interim Order and the Loan Documents shall be and remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, or substantive consolidation, all of the terms and conditions of this Interim Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

**Exhibit A**

13. <u>Order Binding on Successors</u>. The provisions of this Interim Order shall be binding upon and inure to the benefit of Lender and the Debtor and their respective successors and assigns (including any subsequently appointed trustee, examiner or other estate representative appointed as a representative of the Debtors' estates or of any estate in any successor cases). No third parties are intended to be or shall be deemed to be third party beneficiaries of this Interim Order or the Loan Documents.

14. <u>No Liability to Third Parties</u>. Lender shall not (i) have liability to any third party nor shall it be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person", "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the Unites States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any fiduciary duty to the Debtors, their creditors or their estates, and (ii) Lender's relationship with the Debtors shall not constitute nor be deemed to constitute a joint venture or partnership with the Debtors.

15. <u>Order Binding Upon Parties in Interest</u>. All of the provisions of this Interim Order shall be final and binding on the Debtors (including, without limitation, their successors and assigns), the Debtors' shareholders, and all creditors and other parties in interest, including any Chapter 11 or Chapter 7 trustee hereinafter appointed.

16. <u>Effect of Modification of Interim Order</u>. The Debtors shall not, without Lender's prior written consent (which shall be given or refused in its sole discretion), seek to modify, vacate or amend this Interim Order or any Loan Documents. If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court without Lender's prior written consent, such stay, modification or vacatur shall not affect

**Exhibit A**

the validity of any obligation outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such obligations. Notwithstanding any such stay, modification or vacatur, any obligation outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Interim Order, and Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such obligations.

17. <u>Safe Harbor</u>. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code.

18. <u>Continued Preliminary Hearing</u>. The Preliminary Hearing is continued to _____, 2017 at \_\_\_\_ a.m./p.m. (the "<u>Continued Preliminary Hearing</u>") (ECF No. \_\_\_). This Interim Order is without prejudice to the Debtors seeking the complete relief requested in the Motion, including without limitation, authorization to obtain additional credit for a total extension of credit to the Debtors from the Lender of up to $1,146,612 Continued Preliminary Hearing ("<u>Additional Interim DIP Loan</u>") and the granting of a senior priming lien on all the Debtors' assets as security for the Interim DIP Loan and any Additional DIP Loan.

19. The Debtors shall promptly serve a copy of this Order, by regular mail upon the creditors holding the 20 largest unsecured claims of each of the Debtors, or the Committee, if

**Exhibit A**

appointed, and any other party which theretofore has filed in the Chapter 11 Cases a request for special notice with this Court and served such request upon Debtors' counsel.

20. <u>Waiver</u>. The Lender has not consented to, through the Interim DIP Loan, Approved Budget or otherwise, and the Debtors waive, the claim, right or other imposition of any costs or expense of administration or other charge, fees, liens, assessment or claim (including, without limitation, any amounts set forth in the Approved Budget) against Lender, its claims or collateral (including the Collateral) under § 506(c) of the Bankruptcy Code or otherwise, all of which rights the Debtors shall waive pursuant to the terms of an interim order granting this Motion and approving the Interim Financing. Accordingly, the Lender shall not be subject to the equitable doctrine of "marshaling", surcharge, subordination, or any other similar doctrine with respect to any of Lender's Collateral, or otherwise.

21. <u>Objections Overruled or Withdrawn</u>. All objections to the entry of this Interim Order have been withdrawn or are hereby overruled.

22. <u>Controlling Effect of Order</u>. To the extent any provisions in this Interim Order conflict with any provisions of the Motion, or any Loan Document, the provisions of this Interim Order shall control.

23. <u>Order Effective</u>. This Interim Order shall be effective *nunc pro tunc* to _____, 2017 at _____ a.m./p.m.

# # #

{41456644;2}

14

**Exhibit A**

Submitted by:

Steven R. Wirth
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
Telephone: (813) 209-5093
Facsimile: (813) 218-5407
steven.wirth@akerman.com

Copy furnished to:

Donald R. Kirk, Esq.

*(Attorney Wirth is directed to serve a conformed copy of this Order and to file a Certificate of Service with the Court).*

{41456644;2}                                             15

**Exhibit A**

EXHIBIT A
Approved Budget

**Exhibit A**

**Grandparents.com, Inc.**
**Cash Budget**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4/21/2017 | 4/28/2017 | 5/5/2017 | 5/12/2017 | 5/19/2017 | 5/26/2017 | 6/2/2017 | 6/9/2017 | 6/16/2017 | 6/23/2017 | 6/30/2017 | 7/7/2017 | 7/14/2017 | 7/21/2017 | 7/28/2017 | |
| **Beginning Cash** | $ 53,907 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 103,260 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 53,907 |
| **Cash In** | | | | | | | | | | | | | | | | |
| Advertising (imedia, Amazon Sales, Crosspixel, datonics, other) | | 750 | | | 3,500 | | | | 3,500 | | | | 3,500 | | | 11,250 |
| AETNA Royalties & Commissions | 150 | 150 | 150 | 150 | 2,150 | 150 | 150 | 150 | 2,150 | 150 | 150 | 150 | 2,150 | 150 | 150 | 8,250 |
| AGA Membership Fees | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 6,000 |
| Other | | | | | | | | | | | | | | | | - |
| **Total Cash In** | 550 | 1,300 | 550 | 550 | 6,050 | 550 | 550 | 550 | 6,050 | 550 | 550 | 550 | 6,050 | 550 | 550 | 25,500 |
| **Cash Out** | | | | | | | | | | | | | | | | |
| **Payroll & Benefits** | | | | | | | | | | | | | | | | |
| Richard Anthony | | 6,250 | | 6,250 | | | 6,250 | | 6,250 | | 6,250 | | 6,250 | | 6,250 | 43,750 |
| Steve Leber | | | 10,000 | | | | 10,000 | | | | 10,000 | | | | | 30,000 |
| Lee Lazarus | | 10,336 | | 10,336 | | | 10,336 | | 10,336 | | 10,336 | | 10,336 | | 10,336 | 72,352 |
| Latoya Monah | | 2,708 | | 2,708 | | | 2,708 | | 2,708 | | 2,708 | | 2,708 | | 2,708 | 18,956 |
| Elena Fries | | 2,604 | | 2,604 | | | 2,604 | | 2,604 | | 2,604 | | 2,604 | | 2,604 | 18,228 |
| Jessica Dysart | | 2,000 | | 2,000 | | | 2,000 | | 2,000 | | 2,000 | | 2,000 | | 2,000 | 14,000 |
| Employer Taxes | | 14,760 | | 14,760 | | | 14,760 | | 14,760 | | 14,760 | | 14,760 | | 14,760 | 103,320 |
| ADP | 275 | | 275 | | 275 | | | 275 | | 275 | | | | 275 | | 1,650 |
| Health Insurance Group | | | 7,291 | | | | | 7,291 | | | | 7,291 | | | | 21,873 |
| **Consultants** | | | | | | | | | | | | | | | | |
| Commission's to Clare | 1,250 | | | | | | | | | | | | | | | 1,250 |
| Accountant | | | | 2,220 | | | | | 2,220 | | | | 2,220 | | | 6,660 |
| **Operating Expenses** | | | | | | | | | | | | | | | | |
| Rent | | 2,500 | | | | | 2,500 | | | | 2,500 | | | | 2,500 | 10,000 |
| Bank Fees | | 125 | | | | 125 | | | | | | | | | | 250 |
| Other Insurance D&O | 15,818 | | | | | 15,818 | | | | 15,818 | | | | 15,818 | | 63,272 |
| ** Insurance D&O Tail | | | | | | | | | | | | | | | 236,456 | 236,456 |
| Telephone | 217 | | | | 217 | | | | | 217 | | | | 217 | | 868 |
| Office Expenses | | | | | 2,000 | | | | 2,000 | | | | 2,000 | | | 6,000 |
| Computershare | | | 600 | | | | | | | | | | | | | 600 |
| Computers & Printers | 3,500 | | | | | | | | | | | | | | | 3,500 |
| **IT** | | | | | | | | | | | | | | | | |
| Mailchimp | 3,100 | | | | | 3,100 | | | | | 3,100 | | | 3,100 | | 12,400 |
| Rackspace | | | 2,510 | | | | | 2,510 | | | | 2,510 | | | 2,510 | 10,040 |
| Equisolve | | 399 | | | | 399 | | | | 399 | | | | 399 | | 1,596 |

Confidential - The Rising Group Consulting, Inc.    4/14/2017 1:47 PM    Page 1

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 4/21/2017 | 4/28/2017 | 5/5/2017 | 5/12/2017 | 5/19/2017 | 5/26/2017 | 6/2/2017 | 6/9/2017 | 6/16/2017 | 6/23/2017 | 6/30/2017 | 7/7/2017 | 7/14/2017 | 7/21/2017 | 7/28/2017 |  |
| GoDaddy |  |  | 300 |  |  |  |  |  |  |  |  |  |  |  |  | 300 |
| Amazon Cloud Service GC |  |  | 2,900 |  |  |  | 2,900 |  |  |  | 2,900 |  |  |  | 2,900 | 11,600 |
| Shutterstock |  | 249 |  |  | 249 |  |  |  |  |  |  |  |  |  |  | 249 |
| Digital Ocean |  |  | 183 |  |  |  | 183 |  |  |  | 183 |  |  |  | 183 | 732 |
| Amazon Cloud Service (AWS) GP |  |  | 64 |  |  |  | 64 |  |  |  | 64 |  |  |  | 64 | 256 |
| Cloud Nine |  |  | 64 |  |  |  | 64 |  |  |  | 64 |  |  |  | 64 | 256 |
| Sprout Social |  |  | 59 |  |  |  | 59 |  |  |  | 59 |  |  |  | 59 | 236 |
| GitHub |  |  | 25 |  |  |  | 25 |  |  |  | 25 |  |  |  | 25 | 100 |
| Google Storage |  | 8 |  |  |  | 8 |  |  |  | 8 |  |  |  | 8 |  | 32 |
| Google Expense |  | 283 |  |  |  | 283 |  |  |  | 283 |  |  |  | 283 |  | 1,132 |
| GitHub |  |  | 25 |  |  |  | 25 |  |  |  | 25 |  |  |  | 25 |  | 100 |
| Balsamiq |  | 12 |  |  |  | 12 |  |  |  | 12 |  |  |  | 12 |  | 48 |
| Inspectlet |  |  | 79 |  |  |  | 79 |  |  |  | 79 |  |  |  | 79 | 316 |
| Box | 49 |  |  |  | 49 |  |  |  | 49 |  |  |  | 49 |  |  | 196 |
| **Other** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Misc. |  | 2,500 |  |  |  | 2,500 |  |  |  |  | 2,500 |  |  |  | 2,500 | 10,000 |
| One Time Transfer to GIS |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | - |
| Board Fes |  |  |  |  |  |  |  |  |  |  | 15,000 |  |  |  |  | 15,000 |
| **Restructuring Fees** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| CRO |  |  |  | 25,000 |  |  |  |  | 25,000 |  |  |  | 25,000 |  | 125,000 | 200,000 |
| TRGC |  |  |  | 15,000 |  |  |  |  |  | 10,000 |  |  |  | 10,000 |  | 35,000 |
| Filing Fees/Quarterly US Trustee Fees |  |  |  |  |  |  |  |  |  |  |  |  | 5,850 |  | 2,600 | 8,450 |
| Moving Exp. |  | 10,000 |  |  |  |  |  |  |  |  |  |  |  |  |  | 10,000 |
| * Retention Bonus Lazarus |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 124,032 | 124,032 |
| Retention Bonus Others |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 21,938 | 21,938 |
| **Total Cash Out** | 24,209 | 54,485 | 24,375 | 80,878 | 2,790 | 22,245 | 57,067 | 9,786 | 75,707 | 20,112 | 74,567 | 7,291 | 83,777 | 20,112 | 559,592 | 1,116,993 |
| **Net Change in Cash** | (23,659) | (53,185) | (23,825) | (80,328) | 3,260 | (21,695) | (56,517) | (9,236) | (69,657) | (19,562) | (74,017) | (6,741) | (77,727) | (19,562) | (559,042) | (1,091,493) |
| **Advance/DIP** | 69,752 | 53,185 | 23,825 | 80,328 | - | 18,435 | 56,517 | 9,236 | 69,657 | 19,562 | 74,017 | 6,741 | 77,727 | 19,562 | 459,042 | 1,037,586 |
| **Ending Cash Balance** | 100,000 | 100,000 | 100,000 | 100,000 | 103,260 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | - | - |

* To be paid pursuant to carve out in DIP loan  
** D&O (Estimate) - Budget to be updated upon receiving final quote for D&O tail.  
***The DIP lender has agreed to fund the "$1,116,993" in accordance with the Approved Budget, but the total available under the prepetition credit facility/DIP Loan, subject to Lender's approval, is $1.575 million.

Grandparents.com, Inc.  
Cash Budget

Case 17-14711-LMI    Doc 11-1    Filed 04/14/17    Page 19 of 19

| | 1<br>4/21/2017 | 2<br>4/28/2017 | 3<br>5/5/2017 | 4<br>5/12/2017 | 5<br>5/19/2017 | 6<br>5/26/2017 | 7<br>6/2/2017 | 8<br>6/9/2017 | 9<br>6/16/2017 | 10<br>6/23/2017 | 11<br>6/30/2017 | 12<br>7/7/2017 | 13<br>7/14/2017 | 14<br>7/21/2017 | 15<br>7/28/2017 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Grandparents Insurance Solutions, Inc.** | | | | | | | | | | | | | | | | |
| Cash | 40,000 | 35,800 | 34,184 | 34,184 | 34,184 | 29,984 | 28,368 | 28,368 | 28,368 | 28,368 | 24,168 | 22,552 | 22,552 | 22,552 | 18,352 | 40,000 |
| Expenses | | | | | | | | | | | | | | | | |
| Preferred Employers (Mel Harris) | 4,200 | | | | 4,200 | | | | | 4,200 | | | | 4,200 | | 16,800 |
| State Licensing Fees | | 500 | | | | 500 | | | | | 500 | | | | 500 | 2,000 |
| Other Insurance E&O | | 1,116 | | | | 1,116 | | | | | 1,116 | | | | 1,116 | 4,464 |
| Cash Out | 4,200 | 1,616 | - | - | 4,200 | 1,616 | - | - | - | 4,200 | 1,616 | - | - | 4,200 | 1,616 | 23,264 |
| Ending Cash Balance | 35,800 | 34,184 | 34,184 | 34,184 | 29,984 | 28,368 | 28,368 | 28,368 | 28,368 | 24,168 | 22,552 | 22,552 | 22,552 | 18,352 | 16,736 | 16,736 |